**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF KANSAS**

RICK MARKHAM,                      )
                                   )
                  Plaintiff,       )      **CIVIL ACTION**
                                   )
v.                                 )      No.  10-1363-MLB
                                   )
THE BOEING COMPANY,                )
                                   )
                  Defendant.       )
_____)

**MEMORANDUM AND ORDER**

This case comes before the court on defendant Boeing Company's motion for summary judgment (Doc. 31).  The matter has been fully briefed and is ripe for decision (Docs. 32, 35, 44, 46[1]).  For the reasons stated more fully herein, defendant's motion is granted in part and denied in part.

**I.    INTRODUCTION**

Plaintiff Rick Markham alleges that defendant discriminated against him in violation of the Americans with Disabilities Act[2] ("ADA"), 42 U.S.C. § 12101, et seq., and further discriminated against him in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 601, et seq., when defendant demoted him from captain, a supervisory position, to security officer.

---

[1] Plaintiff's motion for leave to file a surreply is granted. (Doc. 46).

[2] The pretrial order in this case also alleges a claim of retaliation in violation of the ADA.  Plaintiff, however, has now withdrawn that claim.  (Doc. 35 at 7, n. 1).

## II. FACTS[3]

Plaintiff was born on November 5, 1946, and has a Master's Degree in Business Administration.  Plaintiff was hired by defendant in May 1989 to work as a scheduler/dispatcher.  In November 1989, Boeing promoted plaintiff to the position of security and fire protection dispatcher.  In February 1999, plaintiff was again promoted to the position of uniformed security officer.  In January 2001, plaintiff received a promotion to the position of uniformed security officer manager (referred to as "captain").  Plaintiff was demoted from this position in January 2009, at the age of 62.

Plaintiff has a visible deformity and blindness in his right eye. Plaintiff's blindness affects his depth perception but has not affected his ability to perform his job.  Plaintiff has never requested an accommodation from defendant due to his blindness.

In January, defendant implemented a reduction in force ("RIF") to combine the management structure of the fire and security departments.  The RIF reduced the number of captains in the security department from three to one.  The three captains in the security department were plaintiff, Edward Plikuhn and Valinda Hanks.  At the time of the RIF, plaintiff was 62, Hanks was 49 and Plikuhn was 36. Plikuhn began his career with defendant in 2001 and had been a captain since 2005.

---

[3] Several of the facts are controverted.  The court views all controverted facts in the light most favorable, along with all favorable inferences, to plaintiff.  See Hall v. United Parcel Serv., No. Civ. A. 992467-CM, 2000 WL 1114841, at *5 (D. Kan. July 31, 2000) (citing Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 670 (10th Cir. 1998)).  To the extent relevant, the factual disagreements between the parties will be noted.

-2-

Plaintiff's supervisor, Joe Kondziola, developed a skill assessment matrix with the human resources department in order to evaluate the three captains. Kondziola selected six competencies that he believed were important for the position and assigned a rating from one to five, with five being the highest score. Plaintiff received the lowest rating out of the three. The scores were as follows:

| Competency | Plaintiff | Hanks | Plikuhn |
|---|---|---|---|
| 1. Building a successful team | 1 | 3 | 4 |
| 2. Building trust | 1 | 2 | 5 |
| 3. Ethical leadership | 3 | 3 | 4 |
| 4. Managing conflict | 1 | 2 | 5 |
| 5. Motivating others | 1 | 2 | 5 |
| 6. Security & Fire Experience | 3 | 3 | 3 |

In addition, all captains were given a score for business goals and objections and performance values/leadership attributes. These scores were obtained from the captains' most recent performance review. All captains scored equally in the business goals category; however, plaintiff scored the lowest in the performance values category. The RIF procedure used in this case was set out in defendant's company policies for RIF procedures. The six competencies set out in the chart were given a combined weight of 60% of the captains overall score. The remaining score came from a review of the categories in the captains' performance reviews.

At times during plaintiff's employment as captain, Kondziola raised concerns with plaintiff about his performance. Kondziola's

-3-

concerns pertained to plaintiff's inability to form and keep a team, his management style, inability to inspire others and his demeaning behavior towards his subordinates.   In 2006, Human Resources consultant Ted Keenan found that plaintiff subjected his subordinates to intimidation and humiliation by calling an officer "Dumb, Dumber and Dumbest" and rubbing his captain's bars on his uniform and stating "because of these" in response to being asked about his basis for decisions.   Plaintiff denies the findings in Keenan's report. Kondziola, however, cites the findings as support for his rankings in the matrix and his ultimate decision.

Ultimately, Kondziola decided to retain Plikuhn in the captain's position.   On December 18, 2008, Kondziola administered plaintiff's annual performance review.   Kondziola testified that he told plaintiff at this time that his position was being downgraded to that of security officer.   Plaintiff believed Kondziola was talking about his performance rating being downgraded and not that he was being demoted.[4]   On January 22, 2009, plaintiff received his sixty day notice along with Hanks.   Plaintiff spoke with Kondziola about the notice and was informed that Plikuhn "was still young enough to - to change and adapt to change" or "young enough to adapt to a change." Kondziola then asked plaintiff's age and, after being informed of his age, began speaking about retirement options.   Plaintiff responded that he could not retire right then and Kondziola stated that he had reserved a position for plaintiff as a security officer.   Plaintiff

---

[4] See Plaintiff's Depo. at 47.   However, plaintiff's ethics complaint states that Kondziola informed plaintiff in December that he would be receiving his sixty day lay off notice in January or March.  (Doc. 32, exh. K).

accepted that position.

Hanks also spoke with Kondziola about the reason she was being demoted from her position as captain.  Hanks testified that Kondziola told her that she and plaintiff were too old for the position of captain.  (Docs. 35, exh. D; 45, exh. M at 152-53).   Kondziola also referenced her performance evaluations and employee complaints that occurred while she was captain.   Hanks was also demoted to the position of security officer but she suffered a stroke prior to the effective date and has been on disability leave.

In May 2009, plaintiff made an internal ethics complaint alleging age discrimination.   In October 2010, plaintiff filed his complaint alleging claims of age and disability discrimination.  Defendant moves for summary judgment on all claims.

## III.  SUMMARY JUDGMENT STANDARDS

The rules applicable to the resolution of this case, now at the summary judgment stage, are well-known and are only briefly outlined here.   Federal Rule of Civil Procedure 56(c) directs the entry of summary judgment in favor of a party who "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c). An issue is "genuine" if sufficient evidence exists so that a rational trier of fact could resolve the issue either way and an issue is "material" if under the substantive law it is essential to the proper disposition of the claim.   Adamson v. Multi Community Diversified Svcs., Inc., 514 F.3d 1136, 1145 (10th Cir. 2008).   When confronted with a fully briefed motion for summary judgment, the court must ultimately determine "whether there is the need for a trial–whether,

in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986).   If so, the court cannot grant summary judgment.   Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

**IV.   ANALYSIS**

**A.   ADA Claim**

The analytical framework articulated in McDonnell Douglas controls the court's analysis of plaintiff's disability discrimination claim because he seeks to proceed to trial on the basis of circumstantial evidence of discrimination.   See Johnson v. Weld County, Colo., 594 F.3d 1202, 1217 (10th Cir. 2010).   Accordingly, plaintiff must first establish a prima facie case of discrimination, showing a genuine issue of material fact exists the following three elements: "(1) [he] is a disabled person as defined by the ADA; (2) [he] is qualified, with or without reasonable accommodation, to perform the essential functions of the job held or desired; and (3) [his] employer discriminated against [him] because of [his] disability." Id.   If plaintiff establishes a prima facie case, "the burden shifts to the defendant to offer a legitimate nondiscriminatory reason for its employment decision. Should the defendant articulate a nondiscriminatory reason, the burden shifts back to plaintiff to show a genuine issue of material fact as to whether defendant's reason for the discharge is pretextual." Id.

With respect to the first prong of plaintiff's prima facie case, defendant begins by contending, in a footnote, that the ADA Amendments Act of 2008 (ADAAA) is not applicable because the decision regarding

plaintiff's position was made in December 2008, prior to the effective date of the ADAAA.[5]  Plaintiff, however, asserts that he was not informed of the decision until he received his layoff notice in January 2009.  At this point, the evidence concerning when plaintiff learned of the decision is in dispute.  Moreover, the actual office notice of plaintiff's termination from his position was not issued until January 2009.  This fact supports a finding that some allegedly discriminatory conduct occurred in 2009.  Therefore, the court finds that the ADAAA is applicable to plaintiff's claim.

The ADAAA has "lowered the bar" on the disability inquiry. Indeed, the ADAAA was passed in response to decisions by the U.S. Supreme Court that, according to Congress, had "created an inappropriately high level of limitation necessary to obtain coverage under the ADA," and was intended to reinstate "a broad scope of protection . . . available under the ADA."  See Norton v. Assisted Living Concepts, Inc., 786 F. Supp.2d 1173, 1184 (E.D. Tex. 2011) (citations omitted).  While an ADA plaintiff must still show that he has a physical or mental impairment that substantially limits a major life activity, 42 U.S.C. § 12102(1)(A), the ADAAA has "significantly expanded" the terms within that definition in favor of broad coverage. See id.  In expanding the definition of disability, Congress intended to convey "that the question of whether an individual's impairment is

---

[5] The ADA was amended on September 25, 2008, but the amended version specifically became effective on January 1, 2009. ADA Amendment Act of 2008 ("ADAAA"), Pub.L. 110–325, 122 Stat. 3553 (2008). The Tenth Circuit has determined that the amendments do not apply retroactively. See Hennagir v. Utah Dep't of Corr., 587 F.3d 1255, 1261, n. 2 (10th Cir. 2009) (finding it unnecessary to consider the effect of the ADA amendments because the allegedly discriminatory conduct occurred prior to the amendments).

a disability under the ADA should not demand extensive analysis" and that the "primary object of attention in cases brought under the ADA should be whether entities covered under the ADA have complied with their obligations." Id. at 1185. Consistent with this purpose, the implementing regulations state that the terms "substantially limiting" and "major" are not intended to be "demanding" standards. 29 C.F.R. § 1630.2(i)(2) & (j)(1)(i) (2011).

Defendant's argument in support of its motion for summary judgment on this issue asserts that plaintiff has not established that his impairment substantially limits the major life activity of seeing. Plaintiff testified in his deposition that he has no depth perception and that he has to turn his head 180 degrees to see to his right. This also affects his neck and causes frequent headaches.[6] Defendant asserts that a loss of depth perception alone is not enough to establish that he is substantially limited in seeing. Plaintiff cites Albertson's Inc. v. Kirkingburg, 527 U.S. 555, 119 S. Ct. 2162, 144 L. Ed.2d 518 (1999), to support the conclusion that persons with monocular vision – vision in only one eye – will ordinarily be found to be disabled. Defendant contends that Albertson's stands for the proposition that each case must be looked at and plaintiff must establish that his vision significantly affects the activity of seeing.

---

[6] Plaintiff also expanded on the impact of his loss of depth perception in an affidavit. See doc. 35 at exh. B. Defendant asserts that the affidavit is a sham and was produced in order to create a genuine dispute of material fact. The court does not need to resolve this issue, however, because it has determined that a genuine dispute of material fact does exist on the issue of plaintiff's disability based on the testimony in plaintiff's deposition.

-8-

In Albertson's, the plaintiff sued under the ADA claiming that because he had monocular vision, he was substantially limited in the major life activity of seeing.   The Ninth Circuit agreed with the plaintiff and held that his monocular vision qualified as a disability because "'the manner in which [he] sees differs significantly from the manner in which most people see' because, 'to put it in the simplest terms [he] sees using only one eye; most people see using two.'" Id. at 564, 119 S. Ct. 2162 (quoting Kirkingburg v. Albertson's, Inc., 143 F.3d 1228, 1232 (9th Cir. 1998)).   The Supreme Court, however, rejected the Ninth Circuit's per se approach.   The Court noted that the ADA only "concerns itself only with limitations that are in fact **substantial**."   Id. at 565, 119 S. Ct. 2162 (emphasis supplied). It therefore held that a court must take into account an individual's ability to compensate for the impairment. See id. In the case of monocular vision, the Court said that a court should inquire into whether the individual's brain has developed mechanisms to cope with the impairment.   Although the Court acknowledged that a person with monocular vision will "ordinarily" be considered disabled under the ADA, the Court ruled that a court must determine the existence of a disability on a "case-by-case basis." Id. at 566-67, 119 S. Ct. 2162.

In light of the ADAAA, the court is mindful that the inquiry into whether or not the limitation is substantial is not meant to be "extensive" or demanding.   The Supreme Court in Albertson's held that evidence that a loss of depth perception is substantial would establish a finding of disabled. See id. at 567.  Plaintiff testified that he has no depth perception and must turn his head 180 degrees in order to look to the right.    Therefore, the court concludes that

-9-

genuine issues of material fact exist as to whether plaintiff's blindness constitutes a disability within the meaning of the ADA.[7]

Defendant next contends that plaintiff cannot establish the third element of his prima facie case. According to defendant, inclusion of plaintiff in the RIF was unrelated to his blindness. "[T]o establish the third element of a prima facie case of disability discrimination, the plaintiff must show that [he] was terminated because of [his] disability, or that the employer terminated the plaintiff 'under circumstances which give rise to an inference that the termination was based on [his] disability.'" Butler v. City of Prairie Village, Kan., 172 F.3d 736, 748 (10th Cir. 1999) (citing Morgan v. Hilti, Inc., 108 F.3d 1319, 1323 (10th Cir. 1997)). The third prong of the test does not impose an "onerous" burden, but it also is "not empty or perfunctory." Morgan, 108 F.3d at 1323–24. Plaintiff is required "to present some affirmative evidence that disability was a determining factor in the employer's decision." Id.

Plaintiff argues that there is an inference of discrimination because Plikuhn did not have a disability and the decision maker was aware of plaintiff's disability. The mere fact of plaintiff's disability and Plikuhn's lack of a disability is not affirmative evidence that the disability was a determining factor in defendant's decision.

Plaintiff also asserts that the differences in Plikuhn's

---

[7] The court notes that one of the requirements of plaintiff's job is proficient use of a firearm. The uncontroverted evidence is that plaintiff has met that requirement. The court doubts that a jury would give much credit to plaintiff's complaints regarding his vision disability in view of his proficiency with a firearm.

education, experience and security clearance gives rise to an inference of discrimination because Plikuhn was retained instead of plaintiff.  Kondziola, however, considered experience in making his decision.  Kondziola did not consider education but there is no evidence that plaintiff's master's degree would equip him to be a better candidate than Plikuhn who holds a bachelor's degree.  With respect to the security clearance, the only difference between plaintiff and Plikuhn is plaintiff's ability to guard the President's plane in the event the President is in the area.  The facts do not support the conclusion that a Yankee White Clearance is necessary for the position of captain.

In sum, plaintiff has failed to offer any affirmative evidence that his blindness was a determining factor in defendant's employment decision.  See Morgan v. Hilti, Inc., 108 F.3d 1319, 1323 (10th Cir. 1997) (citing Ennis v. National Ass'n of Bus. & Educ. Radio, Inc., 53 F.3d 55, 59 (4th Cir.1995)).  Accordingly, plaintiff has not established the third element of his prima facie case and summary judgment is appropriate on this basis, regardless of whether plaintiff has a "disability" within the meaning of the ADA.[8]

**B.   ADEA Claim**

Plaintiff may use direct or indirect evidence to demonstrate that defendant included him in the RIF because of his age.  See Jones v. Okla. City Pub. Schs., 617 F.3d 1273, 1278–79 (10th Cir. 2010); Hinds v. Sprint/United Mgmt. Co., 523 F.3d 1187, 1201–02 (10th Cir. 2008);

---

[8] Even assuming plaintiff had set forth sufficient evidence with respect to his prima facie case, the court would grant defendant's motion for summary judgment on the ADA claim because plaintiff has failed to raise any inference of pretext.

Cortez v. Wal–Mart Stores, Inc., 460 F.3d 1268, 1273 (10th Cir.2006). Direct evidence demonstrates on its face that defendant demoted plaintiff because of age. See Sanders v. Sw. Bell Tel., L.P., 544 F.3d 1101, 1105 (10th Cir.2008), cert. denied 130 S. Ct. 69 (2009).

Plaintiff first asserts that he has established direct evidence of age discrimination. Plaintiff points to two different statements. First, Hanks testified that when she asked Kondziola why she and plaintiff were not retained in the position of captain Kondziola responded that it was because they were "too old."[9] Second, Kondziola asked plaintiff his age after telling plaintiff his decision to include plaintiff in the RIF and also made the comment that Plikuhn was young enough to adapt to change.

The second statement made directly to plaintiff does not constitute direct evidence of age discrimination. After asking

---

[9] Defendant argues that the court should not consider this statement because Hanks has given inconsistent testimony. Hanks made this statement an affidavit and was then subsequently deposed. In the beginning of her deposition, Hanks testified that Kondziola made a comment about plaintiff and Hanks being in their sixties and Plikuhn being in his forties. Towards the end of the deposition, counsel specifically asked Hanks about the statement in her affidavit. Hanks then testified that the statement in her affidavit was correct and that Kondziola told her that she and plaintiff were too old.

Defendant asks the court to disregard Hanks' statement regarding the "too old" comment because she didn't "recall" the statement early in her deposition. This the court cannot do. The court does not "assess the credibility of [potential] conflicting testimony" on summary judgment. Starr v. Pearle Vision, Inc., 54 F.3d 1548, 1557 (10th Cir. 1995)(citing Anderson, 477 U.S. 242, 255 (1986) ("Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict.")); Zia Trust Co. ex rel. Causey v. Montoya, 597 F.3d 1150, 1153 (10th Cir. 2010)(same).

Moreover, the court is required to view all evidence in a light most favorable to the nonmoving party at this stage of the proceedings.

plaintiff his age, Kondziola began discussion retirement options with plaintiff.  The question regarding plaintiff's age could be construed as Kondziola's attempt to help plaintiff determine if he was eligible for retirement at that time.  "A statement that can plausibly be interpreted two different ways-one discriminatory and the other benign-does not directly reflect illegal animus, and, thus, does not constitute direct evidence."  Hall v. U.S. Dep't of Labor, 476 F.3d 847, 855 (10th Cir. 2007) (quotation omitted).  Moreover, Kondizola's statement regarding Plikuhn being young enough to adapt to change does not directly imply that his decision to choose Plikuhn was because he believed that plaintiff was too told for the position.  At most, this statement is evidence of indirect discrimination.

The statement made to Hanks by Kondziola, however, is another matter.  To constitute direct evidence of age discrimination, "the evidence must be from the decision-maker, must relate directly to the adverse action at issue, and must contain an acknowledgment of discriminatory intent or reveal a propensity to make decisions based on unlawful criteria."  Cuenca v. University of Kansas, 265 F.Supp.2d 1191, 1205 (D. Kan. 2003)(citing Kendrick v. Penske Transp. Servs., Inc., 220 F.3d 1220, 1225 (10th Cir. 2000); Chatfield v. Shilling Const. Co., Inc., 232 F.3d 900, 2000 WL 1531846, *2 (10th Cir. 2000)). This statement was made by Kondziola, undisputedly the sole decision-maker, and was in direct response to a question asking why the decision was made to include plaintiff in the RIF.  Moreover, it did reveal a decision made based on age, an unlawful criteria.

Therefore, plaintiff has established a genuine dispute of material fact as to whether he was in fact included in the RIF because

-13-

of his age.  See Peterson v. Wilmur Communications, Inc., 205 F.
Supp.2d 1014, 1024 (E.D. Wis. 2002)("For example, direct evidence is
found where a letter of demotion from the decision maker states that
because plaintiff is a member of the World Church of the Creator, a
White supremacist political organization ... employees cannot have
confidence in the objectivity of [his] training, evaluation, or
supervision when [he] must compare Whites to non-Whites.")

Even if the court had not determined the statement to be direct
evidence of discrimination, the court would find a genuine dispute of
material fact exists as to whether there is indirect evidence of age
discrimination.  Turning to the indirect evidence analysis, which is
based on the McDonnell-Douglas framework, defendant does not contend
that plaintiff has failed to make his prima facie case.  Rather,
defendant asserts that plaintiff cannot establish pretext.

Evidence of pretext can take a variety of forms.  See Aramburu
v. Boeing Co., 112 F.3d 1398, 1411 n. 10 (10th Cir. 1997).  Plaintiff
can show pretext by pointing to "such weaknesses, implausibilities,
inconsistencies, incoherencies, or contradictions in the employer's
proffered legitimate reasons for its action that a reasonable fact
finder could rationally find them unworthy of credence."  Morgan v.
Hilti, Inc., 108 F.3d 1319, 1323 (10th Cir. 1997)(internal quotations
omitted).  In a RIF case, a plaintiff typically can demonstrate
pretext with evidence that (1) his termination does not accord with
the RIF criteria; (2) defendant deliberately falsified or manipulated
the RIF criteria in order to terminate him; or (3) the RIF was
generally pretextual.  See Pippin v. Burlington Res. Oil & Gas Co.,
440 F.3d 1186, 1193 (10th Cir.2006).

-14-

Regardless how plaintiff goes about showing pretext, he must show "that something more nefarious might be at play," not just that defendant "got it wrong." <u>Johnson v. Weld Cnty.</u>, 594 F.3d 1202, 1211 (10th Cir.2010). Mere conjecture that the employer's explanation is pretext is insufficient to defeat summary judgment. <u>Satterlee v. Allen Press, Inc.</u>, 443 F. Supp.2d 1236, 1245 (D. Kan. 2006). In examining whether defendant's proffered reason is pretextual, the Court must "look at the facts as they appear to the person making the decision to terminate plaintiff." <u>Kendrick v. Penske Transp. Servs., Inc.</u>, 220 F.3d 1220, 1231 (10th Cir. 2000). The Court's role is not to second guess an employer's business judgment. <u>Stover v. Martinez</u>, 382 F.3d 1064, 1076 (10th Cir. 2004).

While defendant's RIF criteria and plaintiff's evaluations support the decision to include plaintiff in the RIF, the court must also look to the age-based statements allegedly made by the decision-maker at the time the layoff notices were received. Both plaintiff and Hanks testified that Kondziola made age-based statements after being told about the layoff. Plaintiff was told he was being laid off and replaced with a younger worker. Kondziola then asked about plaintiff's age and inquired into retirement possibilities. Kondziola also stated that Plikuhn, who was 36, was young enough to adapt to changes. In addition, Kondziola told Hanks, in response to her question of why she and plaintiff were being laid off and Plikuhn was retained, that she and plaintiff were too old.

To indirectly establish pretext through such statements, plaintiff must show some nexus between the discriminatory statements and the employment decision. <u>Walker v. Faith Techs., Inc.</u>, 344 F.

Supp.2d 1261, 1277 (D. Kan. 2004).  "Age-related comments referring directly to the worker may support an inference of age discrimination."  Cone v. Longmont United Hosp. Ass'n, 14 F.3d 526, 531 (10th Cir.1994). In this case, Kondizola's alleged statements about plaintiff being too old for the position of captain, if made, does bear the necessary nexus to plaintiff's termination as the statement was made in conjunction with the receipt of the layoff notice.  Kondizola's statements concerning plaintiff's retirement age and that Pilkuhn was young enough to adapt to change also were made directly at plaintiff in conjunction with the receipt of the layoff notice.

The evidence, while far from overwhelming, is enough to create a genuine dispute of material fact as to whether plaintiff was included in the RIF because of his age.  Therefore, defendant's motion for summary judgment on plaintiff's ADEA claim must be denied.

**V.    CONCLUSION**

Defendant's motion for summary judgment is granted in part and denied in part.  (Doc. 31).  This case is set for status conference on Monday, February 27 at 1:30 p.m. and set for jury trial on Tuesday, March 6 at 9:00 a.m.

A motion for reconsideration of this order is not encouraged. Any such motion shall not exceed 3 double-spaced pages and shall strictly comply with the standards enunciated by this court in Comeau v. Rupp, 810 F. Supp. 1172, 1174 (1992).  The response to any motion for reconsideration shall not exceed 3 double-spaced pages.  No reply shall be filed.

IT IS SO ORDERED.

Dated this __14th__ day of December 2011, at Wichita, Kansas.


                                        s/ Monti Belot
                                        Monti L. Belot
                                        UNITED STATES DISTRICT JUDGE